# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SUSAN M. JOYCE,

     **Plaintiff,**

   **v.**        **Case No. 18-CV-1790**

MILWAUKEE CYLINDER, et al.,

     **Defendants.**

## DECISION AND ORDER GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### 1. Facts

Milwaukee Cylinder manufactures hydraulic, pneumatic, and construction cylinders. (ECF No. 56, ¶ 1.) Susan Joyce began working for Milwaukee Cylinder in 1988, and in conjunction with her employment was a member of the International Association of Machinists, Local 1862. (ECF No. 56, ¶ 2.) In 2013 and 2014 she was a machine operator assigned as the primary operator of a thread roller machine. (ECF No. 56, ¶ 3.) She was also the "process group lead," or "PGL," and as part of those responsibilities she "was to schedule and prioritize jobs, troubleshoot issues, assist with training, and attend production meetings on behalf of her group." (ECF No. 56, ¶ 7.) Two other employees

worked in this area, one of whom was John Carpenter. (ECF No. 56, ¶ 4.) Tim Dove was their supervisor. (ECF No. 56, ¶ 5.) James Kaplinski was the Operations Leader. (ECF No. 56, ¶ 33.)

Joyce and Carpenter had been romantically involved for more than a decade, and when the relationship ended it resulted in tension at work. (ECF No. 56, ¶¶ 9-10.) Carpenter complained to his supervisors on May 7, 2013, that Joyce was harassing him. (ECF No. 56, ¶ 12.) He alleged that Joyce "wrote him threatening notes, paged him over the P.A. to embarrass him, made up safety violations and shop rules about talking too loud in order to have him disciplined, reported production issues to supervisors that did not exist, used her [process group lead] title to control his overtime to hurt him financially, and spoke to him in a demeaning manner…." (ECF No. 56, ¶ 14.) "Specifically, Carpenter testified that Joyce left him notes stating they could never work in the same building if they broke up; recruited others to complain to management about his productivity; wrote baseless nonconformance reports on parts he cut; offered to give other employees unlimited overtime for complaining about Carpenter while taking his own overtime; reporting him to Dove for talking too loud in the shop; and ridiculed him for being bipolar, calling him 'crazy,' 'retard,' and 'bipolar' in front of coworkers." (ECF No. 56, ¶ 15.)

Milwaukee Cylinder investigated Carpenter's complaints, and a human resources manager substantiated many but not all of them. (ECF No. 56, ¶ 19.) Milwaukee Cylinder

considered whether it was possible to separate Joyce and Carpenter but, according to supervisors, doing so would disrupt the flow of the shop. (ECF No. 56, ¶ 27.) And Milwaukee Cylinder could not simply move Joyce or Carpenter to a different job because no comparable jobs were available and because the agreement with the union limited such transfers. (ECF No. 56, ¶¶ 28-29.)

Therefore, Milwaukee Cylinder told Joyce and Carpenter not to have any contact with each other and that all issues should be directed to their supervisors. (ECF No. 56, ¶ 31.) This directive was set forth in a July 25, 2015 memorandum written by Kaplinski and addressed to both Joyce and Carpenter that stated: **"YOU ARE TO HAVE NO DIRECT OR INDIRECT CONTACT OR COMMUNICATION WHATSOEVER WITH EACH OTHER AS LONG AS YOU ARE EMPLOYED BY MILWAUKEE CYLINDER. ALL QUESTIONS ARE TO BE ADDRESSED BY YOUR SUPERVISOR."** (ECF Nos. 47-8; 56, ¶ 34 (emphasis in original).) Joyce disputes receiving this "direct order" (ECF Nos. 56, ¶ 38; 67, ¶ 1), and the copy of the order in the record is unsigned (ECF No. 47-8).

On July 29, 2013, Joyce turned off Carpenter's radio. (ECF No. 56, ¶ 49.) Milwaukee Cylinder concluded that by doing so Joyce violated the July 25 directive, and it issued her a one-day layoff notice. (ECF No. 56, ¶¶ 51, 52.) Joyce filed a grievance, which was denied. (ECF No. 56, ¶ 55.) The denial of the grievance, dated September 6, 2013, stated, "I find that you have violated a direct order from a supervisor, which was you are to have no direct or indirect contact or communications whatsoever with John Carpenter as long as

Case 2:18-cv-01790-WED   Filed 09/21/20   Page 3 of 23   Document 74

you are employed by Milwaukee Cylinder. All questions are to be addressed by your supervisor…." (ECF No. 56, ¶ 56.)

A few days after turning off Carpenter's radio Joyce complained to Dove about Carpenter's productivity. (ECF No. 56, ¶ 59.) Milwaukee Cylinder investigated and concluded that Carpenter's productivity was satisfactory. (ECF No. 56, ¶ 60.) It concluded that Joyce violated the direct order by making an unsubstantiated complaint about Carpenter's productivity and laid her off for three days. (ECF No. 56, ¶ 61.) Joyce's grievance regarding this discipline was also denied. (ECF No. 56, ¶ 62.)

On September 19, 2013, Joyce, union representatives, and a Milwaukee Cylinder representative met to discuss Joyce's grievances. (ECF No. 56, ¶ 66.) At the meeting Kaplinski reiterated that Joyce was not to have any direct or indirect contact with Carpenter. (ECF No. 56, ¶ 66.)

On November 1, 2013, Joyce contacted Dove so Dove could tell Carpenter to move some material. (ECF No. 56, ¶ 67.) Dove paged Carpenter, who did not respond. (ECF No. 56, ¶ 67.) Minutes after her first call, Joyce called Dove again, telling him she had been watching Carpenter eat candy for half an hour. (ECF No. 56, ¶ 67.) Milwaukee Cylinder concluded that, by monitoring Carpenter's whereabouts, Joyce again violated the direct order. (ECF No. 56, ¶ 68.) For this she was issued a five-day layoff. (ECF No. 56, ¶ 68.) Joyce filed another grievance, which was also denied. (ECF No. 56, ¶ 69.)

4

On November 7, 2013, Joyce filed a complaint with the Wisconsin Equal Rights Division (ERD) in which she alleged that Milwaukee Cylinder had discriminated against her because of her sex. (ECF No. 56, ¶ 72.) At the suggestion of the union, Milwaukee Cylinder and Joyce agreed to mediation. (ECF No. 56, ¶¶ 75, 77.) At the mediation Milwaukee Cylinder agreed to expunge the most-recent layoff. (ECF No. 56, ¶ 78.) In turn, Joyce agreed that her grievances to the first three disciplinary actions lacked merit and that the discipline was appropriate. (ECF No. 56, ¶ 79.) At the mediation Milwaukee Cylinder reiterated that Joyce was not to have any sort of contact or interaction with Carpenter and was not to monitor his productivity. (ECF No. 56, ¶ 80.) Joyce indicated that she understood these general expectations. (ECF No. 56, ¶ 83.)

On December 13, 2013, Milwaukee Cylinder concluded that Joyce yet again violated the directive regarding Carpenter by instructing another employee to speak to a supervisor about Carpenter's productivity. (ECF No. 56, ¶¶ 84, 86.) Milwaukee Cylinder issued Joyce a five-day layoff for this incident. (ECF No. 56, ¶ 86.) Joyce again filed a grievance, which was denied. (ECF No. 56, ¶¶ 87, 88.) On December 19, 2013, Milwaukee Cylinder reissued the direct order, which Joyce signed, acknowledging that she understood it. (ECF No. 56, ¶¶ 91, 92.)

On April 22, 2014, Joyce asked an industrial engineer to perform an overall equipment effectiveness study on a small bandsaw to show that another worker was not being productive when he used the saw. (ECF No. 56, ¶¶ 93-94, 98.) Carpenter was the

5

person who primarily operated the small bandsaw. (ECF No. 56, ¶ 95.) Joyce reported that when she used the band saw she cut 200 pieces (presumably of tubes) a day, but the other worker would cut only six. (ECF No. 56, ¶ 94.) An overall equipment effectiveness study was the kind of action that employees resisted; no employee wanted to be measured for productivity. (ECF No. 56, ¶ 97.)

Milwaukee Cylinder concluded that it was clear that Joyce was not going to comply with direct orders to leave Carpenter alone, and therefore it was appropriate to terminate her employment. (ECF No. 56, ¶¶ 99-101.) In its letter terminating Joyce's employment Milwaukee Cylinder outlined a number of other recent incidents where Joyce had violated the direct order to leave Carpenter alone and for which she had not been disciplined. (ECF No. 56, ¶ 104.) For example, she wrote three "safety cards" related to Carpenter for alleged safety violations that Milwaukee Cylinder concluded were baseless or trivial. (ECF No. 56, ¶ 105.) She also repeatedly told another employee to turn down Carpenter's radio. (ECF No. 56, ¶ 107.)

On August 1, 2014, Joyce filed a second complaint with the Wisconsin Equal Rights Division alleging that Milwaukee Cylinder discriminated against her because of her sex and retaliated against her for filing the first complaint. (ECF No. 56, ¶ 109.)

## 2. Procedural History

A six-day hearing was held before an ERD administrative law judge (ALJ) in 2016. On September 29, 2017, the ALJ issued a decision, finding that Joyce had failed to prove

that Milwaukee Cylinder discriminated or retaliated against her. (ECF No. 56, ¶¶ 110, 112.) Joyce sought review of that decision by Wisconsin's Labor and Industry Review Commission (LIRC). (ECF No. 56, ¶ 113.)

On November 12, 2018, Joyce filed this action against Milwaukee Cylinder and her union, International Association of Machinists, Local 1862, alleging that both discriminated against her based on her sex, in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1, ¶ 72-73.) She also alleges that Milwaukee Cylinder retaliated against her for complaining of sex discrimination. (ECF No. 1, ¶¶ 76-77.)

On October 31, 2019, the LIRC affirmed the ALJ's decision. (ECF No. 42 at 3.) On November 27, 2019, Joyce filed in Milwaukee County Circuit Court a petition for review of the LIRC's decision. (ECF No. 56, ¶ 116.)

On January 3, 2020, Milwaukee Cylinder filed a motion to stay this action pending the resolution of Joyce's appeal in state court of the unfavorable decision by the Wisconsin ERD. (ECF No. 41.) In response, on January 7, 2020, Joyce moved to voluntarily dismiss her state court action. (ECF No. 53-2 at 1-4.) Ten days later Milwaukee Cylinder and the union both filed motions for summary judgment in this action. (ECF No. 44, 48.)

The court granted the motion to stay on February 19, 2020. (ECF No. 62.) On June 22, 2020, defense counsel informed this court that the state court had granted Joyce's motion to dismiss her action. (ECF No. 63.) The following day this court vacated its stay and ordered the defendants to file any reply in support of their motions for summary

7

judgment no later than July 7, 2020. (ECF No. 64.) The defendants replied (ECF Nos. 65, 69), and the motions for summary judgment are ready for resolution. All parties have consented to the full jurisdiction of this court. (ECF Nos. 8, 9, 21.)

### 3. Analysis

#### 3.1. Preclusion

There are two preclusion doctrines—issue preclusion and claim preclusion. But because these doctrines have been referred to by different names, and those names have been used inconsistently, it is necessary to take care in reviewing relevant case law. *Webster v. Milwaukee Cnty.*, 731 F. Supp. 2d 837, 840 (E.D. Wis. 2010). "The preclusion doctrines have confused generations of law students and attorneys, and often perplexed the courts." *Id*. The case law discussing the preclusion doctrines is muddled, and the nomenclature is applied inconsistently. *Id.* (quoting *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)).

"State administrative findings that have been subjected to state judicial review are entitled to both claim and issue preclusive effect in federal courts." *Staats v. Cnty. of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000) (*Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 n.22 (1982)). Joyce filed an action in Milwaukee County Circuit Court to challenge the ERD's decision, but shortly thereafter the state court granted her motion to voluntarily dismiss that action. Consequently, the ERD's decision has not been subjected

8

to state judicial review. Nonetheless, Milwaukee Cylinder argues that the ERD's decision is entitled to issue preclusive effect.

The doctrine of issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (internal quotation marks omitted). Issue preclusion is narrower than claim preclusion, *Hayes v. City of Chi.*, 670 F.3d 810, 814 (7th Cir. 2012), and "requires an identity of issues," *Coleman*, 667 F.3d at 853. It "seeks to 'conserve judicial resources and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Silva v. Wisconsin*, 917 F.3d 546, 562 (7th Cir. 2019) (quoting *Taylor*, 553 U.S. at 892) (brackets omitted).

In addressing whether a state administrative agency's findings would have preclusive effect in a subsequent federal lawsuit under Title VII, the Supreme Court has concluded that, in enacting Title VII, Congress preempted the common law of preemption and "did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796, 106 S. Ct. 3220, 3225 (1986). The Court's explanation applies equally to both claim and issue preclusion. It noted that "[u]nder 42 U.S.C. § 2000e-5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give 'substantial weight to final findings and orders made by State or local authorities in

9

proceedings commenced under State or local [employment discrimination] law.'" *Elliott*, 478 U.S. at 795 (1986). "[I]t would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.* To hold that the decision of an administrative agency precludes review by a federal court would be inconsistent with Congress's intent to afford individuals with a trial *de novo* in federal court. *Id.* (discussing *Chandler* v. *Roudebush*, 425 U.S. 840 (1976)).

Milwaukee Cylinder's reliance on *Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 866 (7th Cir. 1996), is misplaced. *Waid* involved the question of the preclusive effect of an ERD decision vis-à-vis a claim under Title IX. The court in *Waid* distinguished *Elliott* by noting that, unlike Title VII, "Title IX does not disclose any specific congressional intent about how federal courts should treat unreviewed decisions by a state agency that pertain to a lawsuit under Title IX." *Waid*, 91 F.3d at 864.

Thus, an ERD decision is not entitled to either issue or claim preclusive effect unless that decision is reviewed by a state court. The ERD decision here was not judicially reviewed, but rather dismissed prior to a decision on its merits. Therefore, the administrative decision is not entitled to claim or issue preclusive effect.

### 3.2. Joyce's Sex Discrimination Claim Against Milwaukee Cylinder

"Title VII makes it unlawful for an employer to discharge or discipline an employee because of that person's … sex, among other grounds." *Coleman*, 667 F.3d at 845 (citing 42 U.S.C. § 2000e). "If the plaintiff presents evidence from which a reasonable

10

finder of fact could conclude that the plaintiff's sex caused the discharge or discipline, the court must deny the defendant's motion for summary judgment." *Lewandowski v. City of Milwaukee*, No. 16-CV-1089, 2019 U.S. Dist. LEXIS 155499, at *10 (E.D. Wis. Sep. 12, 2019), *aff'd, Lewandowski v. City of Milwaukee*, No. 19-2995, 2020 U.S. App. LEXIS 25848 (7th Cir. Aug. 14, 2020) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Joyce attempts to prove discrimination by way of the familiar burden-shifting framework of *McDonnell Douglas, see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (ECF No. 58 at 11-13.) Under that framework, a plaintiff must first establish a prima facie case of discrimination. The plaintiff establishes a prima facie case if she can show "(1) she is a member of a protected class, (2) she was meeting the legitimate performance expectations of her employer, (3) she suffered an adverse employment action, and (4) another similarly situated individual not in the protected class was treated more fairly." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 883 (7th Cir. 2018) (citing *Coleman*, 667 F.3d at 845). If the plaintiff establishes a prima facie case of discrimination, the employer must provide a legitimate, nondiscriminatory reason for its action. *Coleman*, 667 F.3d at 845 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer does so, "the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

11

Title VII does not require an employer "to make wise or even generally fair decisions, so long as it did not discriminate on the basis of sex." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 630 (7th Cir. 2018). Similarly, "[a]n employee can't sue under Title VII for employment-related mistreatment… unless the mistreatment was related to membership in a protected class." *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 360 (7th Cir. 2019).

For purposes of its motion, Milwaukee Cylinder acknowledges that Joyce is a member of a protected class and that she suffered an adverse employment action. The court begins its analysis by considering whether Joyce has adduced sufficient evidence to satisfy her burden to prove that another similarly situated individual not in the protected class was treated more fairly than she was.

### 3.2.1. Carpenter as a Comparator

"All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman*, 667 F.3d at 846 (quoting *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008)). The court employs a "'flexible, common-sense' examination of all relevant factors" when assessing whether another employee is an appropriate comparator. *Id.* (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). Thus, an alleged comparator need not be a "clone" of the plaintiff, *id.* (quoting *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908, 916 (7th Cir. 2010)), but rather "must be directly comparable to the plaintiff in

12

all *material* respects," *id.* (quoting *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (internal quotation marks omitted; emphasis added)).

Relevant factors include "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications--provided the employer considered these latter factors in making the personnel decision." *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)); *see also Barbera*, 906 F.3d at 629 ("[A]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." (quoting *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)). A plaintiff attempting to prove discrimination or retaliation under Title VII by way of an indirect method of proof must be able to identify at least one comparator to survive a motion for summary judgment. *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 262 (7th Cir. 2014).

Joyce identifies Carpenter as a comparator. She alleges that on one occasion Carpenter told her to "go fuck yourself," and on July 10, 2013, he threatened to get her

13

fired. (ECF No. 58 at 14-15[1].) She allegedly reported the first incident to Dove, who responded only by saying that Joyce and Carpenter needed to stay away from each other. (ECF No. 58 at 15.) When she told Dove about the second incident, he allegedly responded, "Oh, that's just John." (ECF No. 58 at 15.) Dove did not take any action to discipline Carpenter for either incident.

Joyce also alleged that Carpenter was not disciplined when he presented her with a quitclaim deed to sign at work. (ECF No. 58 at 16.) She asserts that "[t]he fact that the quitclaim deed had been brought in was widely known throughout the Company on the day that happened," but she does not support this statement with any citation. She also complains that Carpenter was never disciplined for safety violations or for "bad-mouthing" Joyce. (ECF No. 58 at 15-16.)

It is unclear when the first incident—where Carpenter allegedly said "go fuck yourself"—allegedly occurred. The timing cannot be discerned from the deposition excerpts Joyce provided except that this incident was allegedly discussed with Dove at "a meeting in 2013." (ECF No. 60-1 at 11, 111:22.) But in a parenthetical to the citation in

---

[1] Factual assertions in Joyce's brief that are supported with citations are supported only by citations to various exhibits rather than to proposed findings of fact. This has needlessly complicated the court's assessment of whether the defendants dispute any specific assertion. Moreover, certain factual assertions, including those cited here, are not set forth in any proposed finding of fact. Rather, these assertions are set forth only in response to Milwaukee Cylinder's proposed findings of fact. (ECF No. 56 at 12, ¶ 44.) This, too, is improper and reason to disregard the assertion. *Lanning v. Gateway Tech. Coll.*, No. 19-CV-890, 2020 U.S. Dist. LEXIS 121446, at *1 n.1 (E.D. Wis. July 10, 2020) (citing *Pollock v. ManpowerGroup US, Inc.*, No. 18-CV-107, 2019 U.S. Dist. LEXIS 199665, at *7-8 (E.D. Wis. Nov. 18, 2019)). Nonetheless, lest this procedural error prove dispositive, the court accepts these improperly supported assertions for purposes of the present motion.

support of this factual assertion, Joyce stated, "describing events in February, 2013." (ECF No. 56, ¶ 44.) Thus, the court accepts Joyce's representation that this incident occurred in February of 2013, long before Kaplinski issued the direct order on July 25, 2013, that Joyce and Carpenter were to have no contact with each other.

The second incident, where Carpenter allegedly threatened to get Joyce fired, also predated the July 25, 2013 direct order. Thus, the fact that Carpenter was not disciplined for either of these incidents does not suggest that Carpenter and Joyce were treated differently. It is undisputed that there was mutual hostility that preceded and necessitated the July 25, 2013 direct order, and that prior to that direct order neither Joyce nor Carpenter had been disciplined for their conduct. Because there is no evidence that these incidents occurred after Milwaukee Cylinder's July 25, 2013 direct order that Joyce and Carpenter have no contact with each other, the incidents cannot serve as a basis for comparison.

As for Carpenter allegedly presenting the quitclaim deed to Joyce, the details of this incident are also unclear. Joyce relies on the testimony of Scott Parr, a union business representative (ECF No. 60-6 at 2), who testified at the ERD hearing about an incident where Joyce asked Dove to bring a document over to Carpenter (ECF No. 60-6 at 9-10). The basis for Parr's knowledge is unclear, but the testimony appears to be hearsay. Moreover, the cited testimony does not support the crucial fact—that Carpenter violated the direct order by providing Joyce with a document to sign. It does not appear that Parr

15

knew that Carpenter had first presented the quitclaim deed to Joyce, and that when Joyce requested that Dove deliver the document she was attempting to return it to Carpenter. Nor is there any evidence that the relevant decision maker, Kaplinski, knew that Carpenter provided the document to Joyce. And, finally, it is notable that, even though Parr seems to have understood this as an incident where Joyce was believed to have violated the direct order by providing a document to Carpenter, Parr asked that Milwaukee Cylinder "just let that slide." (ECF No. 60-6 at 9.) And Milwaukee Cylinder appears to have done just that; Joyce was not disciplined for the incident.

As for the alleged "bad mouthing," Joyce supports this assertion with the following citation: "*Id*. at 433:20- 434:4." (ECF No. 58 at 16.) The preceding citation is "Zajac Decl. Exh. G at 95:8-66:14, testimony of Dove." (ECF No. 58 at 16.) There is no page 433 or 434 in Exhibit G. (ECF No. 60-7.) Thus, Joyce has failed to support her assertion, which would be reason enough to end the court's inquiry into this point. *See Burton v. Bd. of Regents*, 851 F.3d 690, 695 (7th Cir. 2017).

But looking beyond this shortcoming, the court presumes Joyce intended to cite Exhibit B. (ECF No. 60-2 at 4.) The excerpted testimony is incomplete, and the court cannot discern the identity of the witness, but it appears to be the testimony of a female co-worker of Joyce's and Carpenter's. (ECF No. 60-2 at 4.) Joyce, in her brief, identifies the source as "Barbara Jordan, a now-retired female co-worker of Joyce's." (ECF No. 58 at 14.) Jordan testified that Carpenter would "be bad mouthing [Joyce] the whole time he

16

was dropping the tubes off by me." (ECF No. 60-2 at 4, 433:20-22.) When asked to clarify when this occurred, Jordan responded, "I don't know. It was right up until the day she got fired, and even afterwards." (ECF No. 60-2 at 4, 434:3-4.)

"Bad mouthing" Joyce behind her back would not appear to violate the terms of the direct order. In any event, Joyce was never disciplined for any sort of similar conduct. The testimony does not show that Carpenter had direct or indirect contact with Joyce following the direct order, much less that Milwaukee Cylinder's management knew of such contact and failed to discipline him.

Finally, Carpenter's alleged safety violations or other behavior that "aggravated Joyce," such as leaving his "work area during break time leaving the radio blasting" (ECF No. 58 at 15), are not an appropriate basis for comparison because Joyce was never disciplined for a safety violation or such amorphous "aggravating" behavior. Nor would these actions appear to violate the direct order.

In sum, Carpenter is an appropriate comparator insofar as they worked in generally similar jobs, shared the same supervisors, and were both subject to the direct order. However, Joyce has failed to produce evidence from which a reasonable finder of fact could conclude that Carpenter similarly violated the direct order or a comparable work rule and was treated differently than Joyce.

17

### 3.2.2. Other Males

Beyond Carpenter, Joyce does not point to any specific male as a comparator. Rather, she attempts to show that men were generally treated better than women at Milwaukee Cylinder. She argues that "the male employees and union representatives at the Company … were treated differently than Joyce at every turn." (ECF No. 58 at 17.) As examples, she asserts, "The union business representative seemingly took at face value everything told to him by the representatives of the Company, and by the union stewards who worked at the Company, agreeing with the Company's and steward's evaluation of Joyce's conduct. (Zajac Decl. Exh. M)." (ECF No. 58 at 17.)

Joyce also alleges that Kaplinski "had 'favorites'" and she was not one of them because he "would never even say hello to her in PGL meetings. (Zajac Decl. Exh. C at 658:23-659:1)." (ECF No. 58 at 17.) Additionally, she alleges "Kaplinski also seemingly had an agenda when it came to two of the four women working on the factory floor, Jenny Behr and Joyce." Joyce does not support this assertion with a citation, but recounts testimony of Barbara Jordan, who said, "I saw that the union stewards were male, and that they often moved into management, and so there was a special bond and relationship between the male union stewards, the male union representatives, and the male management at Milwaukee Cylinder that was unavailable to us women who worked there. (Zajac Decl. Exh. I at 29)." (ECF No. 58 at 17.) As an example of the favoritism toward males, Joyce recounts Jordan's testimony, "We even had to walk the furthest to

use a bathroom, and the women's bathroom was even unheated during most of my employment there." (Id. at 31)." (ECF No. 58 at 18.)

Setting aside questions as to the viability of this sort of collective comparator theory under the *McDonnell Douglas* burden-shifting framework (for which Joyce offers no legal support), the court concludes that vague assertions that men seemed to be favored or that there was a "special bond" between males is insufficient to sustain a plaintiff's burden at summary judgment. The only objective evidence that Joyce offers relates to the women's restroom. But the fact that one restroom was further away is hardly evidence of discrimination. An employer need not provide equidistant restrooms to avoid charges of discrimination. And without additional evidence, including evidence as to the condition of the men's restroom, the assertion that the women's restroom was allegedly unheated is not probative of discrimination.

Joyce has failed to identify any similarly situated individual not in the protected class who was treated more fairly than she was. As a result, she has failed to make out a prima facie case of sex discrimination. Therefore, Milwaukee Cylinder is entitled to summary judgment on Joyce's discrimination claim. *See Gaines*, 742 F.3d at 263.

### 3.3. Joyce's Retaliation Claim Against Milwaukee Cylinder

"To succeed on a Title VII retaliation claim, a plaintiff 'must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against her; and (3) there

19

existed a but-for causal connection between the two.'" *Robertson v. Wis. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (quoting *Burton*, 851 F.3d at 695).

Joyce's argument in support of her retaliation claim is terse. (ECF No. 58 at 21.) It is undisputed that she engaged in protected activity by filing her complaint with the Wisconsin Equal Rights Division. Her only substantive disagreement with Milwaukee Cylinder's position that it did not retaliate against her for making this complaint is that, rather than her termination, the intervening discipline and suspension should be considered when assessing temporal proximity between Joyce's protected activity and the alleged retaliation.

But temporal proximity alone is insufficient to prove retaliation. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006). No reasonable finder of fact could conclude that Milwaukee Cylinder retaliated against Joyce for filing a complaint with the ERD because, as Joyce acknowledges, the discipline she received following her complaint was simply "a resumption of the road they were on [sic] it was just another *new* step towards the Company's goal of getting rid of her." (ECF No. 58 at 21 (emphasis in original).) If Milwaukee Cylinder had effectively already decided to fire Joyce, the fact that it simply continued on that road after she filed an ERD complaint negates any inference that, but-for her complaint, Milwaukee Cylinder would not have taken an adverse action against her.

To the extent that Joyce attempts to rely on the *McDonnell Douglas* burden-shifting framework, *see Rozumalski v. W.F. Baird & Assocs.*, 937 F.3d 919, 926 (7th Cir. 2019), her retaliation claim likewise fails for lack of an appropriate comparator.

### 3.4. Joyce's Sex Discrimination Claim Against the Union

Joyce submitted the same brief in opposition to the union's motion for summary judgment that she submitted in response to Milwaukee Cylinder's motion (not simply a consolidated response, but she actually filed the same brief twice). (ECF Nos. 58, 59.) In her brief she does not develop any argument to support a claim that the union discriminated against her on the basis of sex. Rather, she offers general criticism of the union, including its allegedly cozy relationship with management, that it allegedly took Milwaukee Cylinder's side regarding her grievances, and that it allegedly did not adequately investigate the incidents. (ECF No. 59 at 9-10, 16, 17, 20.) However, she does not present these arguments within the framework of Title VII.

Joyce also argues "that the union was at a minimum negligent and violative of good faith standards in ignoring their obligations to Joyce to make sure her interests were protected." (ECF No. 59 at 20.) This language calls to mind a claim under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, *see, e.g., Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991); *Truhlar v. United States Postal Serv.*, 600 F.3d 888, 892 (7th Cir. 2010); *Bell v. Daimler Chrysler Corp.*, 547 F.3d 796, 804 (7th Cir. 2008), but no such claim

21

was included in her complaint (ECF No. 1). Thus, the court does not consider the issue further.

Joyce also refers to the union in the portion of her brief where she discusses her retaliation claim. (ECF No. 58 at 21.) However, she has not pled a retaliation claim against the union. (*See* ECF No. 1, ¶ ¶ 75-77; *see also* ECF No. 1 ¶ 6 (stating that her administrative claim against the union alleged only sex discrimination).) She argues simply that, in her view, the union "was not wholeheartedly interested in pursuing her interests, as they assumed all along, and believed the argument the Company was likely making – that she was a spurned, angry ex-girlfriend." (ECF No. 58 at 21.) Moreover, the argument is undeveloped and thus forfeited. S*ee, e.g., Basir v. Med. Coll. of Wis.*, No. 18-CV-1136, 2020 U.S. Dist. LEXIS 13641, at *27 (E.D. Wis. Jan. 28, 2020).

As to the merits of her Title VII discrimination claim against the union, it is sufficient to note that Joyce has failed to present evidence that an appropriate comparator was treated more favorably. Accordingly, the union is entitled to summary judgment.

## 4. Conclusion

Because the Equal Rights Division's decision was not judicially reviewed, it is not entitled to any preclusive effect. However, Joyce's retaliation claim against Milwaukee Cylinder and her discrimination claims against Milwaukee Cylinder and the union fail because she has failed to present evidence of a similarly-situated employee outside her protected class who was treated more favorably. Consequently, no reasonable finder of

fact could conclude that Joyce suffered any adverse employment consequence because of her sex or because she complained of alleged discrimination.

**IT IS THEREFORE ORDERED** that Milwaukee Cylinder's motion for summary judgment (ECF No. 44) is **granted**.

**IT IS FURTHER ORDERED** that International Association of Machinists Local 1862's motion for summary judgment (ECF No. 48) is **granted**.

**IT IS FURTHER ORDERED** that Joyce's complaint and this action are dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of September, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

23